# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

FRED BRINSON,

                Petitioner,                Case Number: 05-CV-60296

v.                                    HON. JOHN CORBETT O'MEARA

GERALD HOFBAUER,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Fred Brinson, a state inmate currently incarcerated at the Baraga Maximum
Correctional Facility in Baraga, Michigan, has filed a petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for second-degree murder,
felon in possession of a firearm, intentionally discharging a firearm at a dwelling, and three
counts of possession of a firearm during the commission of a felony. For the reasons set forth
below, the Court denies the petition.

## I.      Background

Petitioner's convictions arise out of the shooting death of Joseph Lee on October 30,
1997, on Roselawn Street in the City of Pontiac. The shooting was precipitated by an argument
that had begun the day before between two groups of women, one of which included Petitioner's
wife, Jonette Lee.

Ladawn Reynolds testified that on the afternoon of October 30, 1997, Jonette Lee called
her and told her that there had been fighting outside her home the previous evening.
Approximately fifteen minutes later, Reynolds and her friend, Shameka Dudley went over to

Jonette's home to ensure that she would not experience any trouble. When they arrived, no one was fighting outside Jonette's home, but many people were congregating in the area. Shortly thereafter, the fighting resumed when Jonette, who was standing on her porch, and some women who were standing in the street began yelling insults at one another. The fight became physical. Kamone Robertson and several other men then exited a home and verbally joined the fighting.

Reynolds testified that Jonette began walking towards Robertson, who pulled a gun. Robertson fired the pistol twice at Jonette's feet and once in the air. Reynolds and Jonette retreated into Jonette's home, where Jonette called her husband who was with a friend, Paula Watley. Joseph Lee said he would return home and brought Watley with him.

By the time Lee and Watley arrived home, there were dozens of people congregating on the street near the Lee house. Paula Watley and Jonette both testified at trial that one of the people standing outside was Petitioner, who was carrying a long gun.

Joseph Lee and his brother, Danny Johnson, sat on the front porch of the Lee home, while Watley and Jonette went inside the home. Johnson testified that he went across the street to talk to a friend. While crossing the street, he saw a group of people walking down the street, holding bats, shouting, "there's going to be a bloody murder tonight." Tr., Vol. II, p. 198. Johnson returned to the Lee home. He assured Joseph that he was carrying a gun. Suddenly, two shots were fired at them from the house across the street. Joseph and Johnson retreated inside the home. A flurry of gunshots followed.

At one point while shots were being fired, Jonette looked out the window and saw Petitioner pointing a long black gun toward her home. Shameka Dudley was shot in the head. Apparently enraged by the sight of Dudley, Joseph walked to the front door and opened it.

Johnson testified that he attempted to pull Joseph back into the home, but before he could do so, Joseph fell to the ground.

Lillie Flanagan, a neighbor, testified that she saw Petitioner walking down the street with a long gun saying he was "tired of this sh-t." Tr., Vol. II, p. 455-56. She saw Petitioner fire a gun in the direction of Joseph. Flanagan later identified Petitioner in a photographic lineup as the individual she saw with a shotgun.

William Hollis testified that he was incarcerated with Petitioner after the shooting. He testified that Petitioner told him that he had shot the victim and that police already had the murder weapon, a shotgun they had taken as evidence in another case.

Petitioner did not testify in his own defense.

## II.    Procedural History

Following a jury trial in Oakland County Circuit Court, Petitioner was convicted of second-degree murder, felon in possession of a firearm, intentionally discharging a firearm at a dwelling, and three counts of possession of a firearm during the commission of a felony. On June 27, 2000, he was sentenced a third habitual offender to forty to eighty years imprisonment for the murder conviction, two to ten years imprisonment for the felon in possession conviction, and two to eight years for the discharge of a firearm conviction, to be served concurrently with one another and consecutively to three concurrent two-year terms for the felony-firearm convictions.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

      I.       Did the Court err in the instructions to the jury with regard to murder second degree creating manifest injustice requiring reversal?

II.      Did the failure of trial counsel to object to the murder second degree instruction and to impeach witnesses deprive Defendant/Appellant of effective assistance of counsel?

The Michigan Court of Appeals affirmed Petitioner's convictions. <u>People v. Brinson</u>, No. 228265 (Mich. Ct. App. March 22, 2002).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised before the court of appeals. The Michigan Supreme Court denied leave to appeal. <u>People v. Brinson</u>, No. 121571 (Mich. Oct. 29, 2002).

Petitioner then filed a motion for relief from judgment and a motion for new trial or hearing in the trial court. He raised the following claims in the motion for relief from judgment:

I.      Did the failure of trial counsel to investigate, and his failure to object to the prosecutor's false and misleading argument deprive Defendant of effective assistance of counsel.

II.      Did the failure of trial counsel to properly investigate the state forensic evidence, and failure to object to the missing non-jacket deformed bullet recovered by Dr. Dragovic deprive Defendant of effective assistance of counsel.

III.      Did the failure of trial counsel to interview, and call witnesses provided to him by Defendant deprive the Defendant of effective assistance of counsel.

The trial court denied Petitioner's motion for relief from judgment and motion for new trial or hearing. <u>People v. Brinson</u>, No. 00-171477 (Oakland County Circuit Court Apr. 12, 2004). Petitioner filed a motion for reconsideration in the trial court, which included the following additional claim:

IV.      Did the failure of appellate counsel to raise issues, requested and provided to him by the defendant deprive the defendant of effective assistance of appellate counsel?

<u>Id.</u> (Oakland County Circuit Court June 2, 2004).

Petitioner filed applications for leave to appeal the trial court's denial of his motion for

4

relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court. Both

appellate courts denied leave to appeal. People v. Brinson, No. 256340 (Mich. Ct. App. Dec. 14,

2004); People v. Brinson, 474 Mich. 931 (2005).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the

following claims:

I.    Did the court err[] in the instruction to the jury with regards to murder second degree creating a manifest injustice requiring reversal?

II.    Did the failure of trial counsel to object to the murder second degree instruction and to impeach witnesses deprive defendant/appellant of effective assistance of counsel?

III.    Did the failure of trial counsel to investigate, and his failure to object to the prosecutor's false and misleading argument as to the location of Mr. Lee upon being shot, and the angle of the shooter, which was not supported on record by expert testimony, or eyewitness testimony, and non-production of the actual facial photo of the deceased injuries, deprive the defendant of effective assistance of counsel?

IV.    Did the failure of trial counsel to properly investigate the state's forensic evidence, and object to the missing non-jacket deformed bullet, recovered from Mr. Lee's head in the left optical region between the scalp and the skull with 3 lead fragments, by Dr. Dragovic, which was supposed to determine who out of 3 shooters killed Mr. Lee, deprive the defendant of effective assistance of counsel?

V.    Did the failure of trial counsel to interview, and call eyewitnesses who were at the scene of the crime, which were provided to him by the defendant, deprive the defendant of effective assistance of counsel?

VI.    Did the failure of appellate counsel to raise issues, request and provided to him by the defendant, deprive the defendant of effective assistance of appellate counsel.

**III.    Discussion**

**A.    Standard of Review**

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts

reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal law, as
>        determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>        determination of the facts in light of the evidence presented in the
>        State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law.  Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998).

Additionally, this Court must presume the correctness of state court factual determinations.  28

U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give

complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary

to" clause as follows:

---

[1]  28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct.

6

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .

[A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 409-11.

**B.      Jury Instruction Claim**

Petitioner argues that habeas relief should be granted because the second-degree murder instruction was deficient in that it did not require the prosecution to prove that Petitioner caused the death of Lee. Respondent argues that the first claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the

petitioner on the merits." Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003), *citing* Lambrix v. Singletary, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." Lambrix, 520 U.S. at 525, 117 S. Ct. at 1523. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991), (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147). The court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Ibid. (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).

The trial court gave the following second-degree murder instruction:

You may also consider the lesser charge of second-degree murder. To prove the charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First, that the defendant caused the death of Joseph Lee. *That is, that Joseph Lee died as a result of a gunshot wound to the head.*

Second, that the defendant had one of these three states of mind: he intended to kill or intended to do great bodily harm to Joseph Lee, or he knowingly created a very high risk of death or great bodily harm to Joseph Lee, or he knowingly

created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions.

Third, that the killing was not justified, excused or done under circumstances that reduce it to a lesser crime.

Tr., p. 906 (emphasis supplied).

Petitioner argues that the italicized portion of the instruction allowed the jury to convict Petitioner simply if the jury determined that Lee died as a result of a gunshot wound without also requiring the jury to find that Petitioner inflicted the gunshot wound. The Michigan Court of Appeals held that, while the italicized sentence, if read in isolation, might be confusing, "the instructions as a whole sufficiently protected the defendant's rights" because the trial court specifically advised the jury that the prosecutor had to prove "'that the defendant caused the death of Joseph Lee'" and the entire focus of the trial was whether Petitioner fired the shot that killed Lee. Brinson, slip op. at 2.

Petitioner has failed to show that the court of appeals' conclusion that the jury instruction adequately conveyed to the jury the elements of second-degree murder was contrary to or an unreasonable application of Supreme Court precedent or that the instruction deprived him of a right secured by the Constitution. Accordingly, the Court denies relief on this claim.

### C. Ineffective Assistance of Counsel Claims

Petitioner asserts several claims of ineffective assistance of trial counsel. Specifically, Petitioner claims that his attorney was ineffective in failing to: (i) object to the second-degree murder instruction; (ii) impeach witnesses; (iii) object to the prosecutor's misstatements regarding the details of the shooting; (iv) object to the prosecutor's failure to produce a photograph of Lee's facial injuries; (v) investigate the state's forensic evidence; (vi) object to the

missing bullet recovered from the victim's skull; and (vii) interview and call eyewitnesses.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Strickland, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. Strickland, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." Id.

### 1.    Jury Instruction

Petitioner claims that his attorney was ineffective in failing to object to the second-degree murder instruction.  As discussed above, Petitioner has failed to show that the instruction was improper or lacking.  Therefore, he cannot show that his attorney was ineffective in failing to object to a proper instruction.

### 2.    Failure to Impeach Prosecution Witnesses

Petitioner also claims that his attorney was ineffective in failing to impeach Lillie Mae Flannigan and Jonette Lee with prior inconsistent statements.  At trial, both Flannigan and Lee testified that they saw Petitioner with a weapon on the night of the shooting.  Lee testified that, seconds before the shooting, she saw Petitioner outside her home with a weapon.  In a police interview cited by Petitioner, she told police that she saw Petitioner several hours before the shooting with a gun and did not see him after that.  Petitioner maintains that his attorney should have cross-examined Lee regarding this inconsistency and his failure to do so was ineffective assistance.

Petitioner also claims that his attorney failed to impeach Lillie Mae Flannigan with her statement to police on November 5, 1997.  In response to the question who was the shooter, Flannigan replied "Y'all say it was Big Fred or something."  Petitioner maintains that defense counsel should have cross-examined Flannigan regarding the uncertainty in this statement.

The Michigan Court of Appeals held that defense counsel adequately cross-examined these witnesses and there is no reasonable likelihood that raising the particular points urged by Petitioner would have impacted the outcome of the trial.  A review of the record shows that defense counsel vigorously cross-examined both witnesses, particularly Flannigan, and explored

several inconsistencies in their testimony. The Court finds that the Michigan Court of Appeals'
conclusion that trial counsel was not ineffective in failing to cross-examine on the particular
points identified by Petitioner was not contrary to or an unreasonable application of Supreme
Court precedent.

### 3.    Procedural Default

Respondent argues that Petitioner's remaining ineffective assistance of counsel claims
are barred from federal habeas review because they are procedurally defaulted.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will result in a fundamental
> miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner
files an untimely appeal, Coleman, 501 U.S. at 752, if he fails to present an issue to a state
appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or
if he fails to comply with a state procedural rule that required her to have done something at trial
to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or
file a motion for a directed verdict. United States v. Frady, 456 U.S. 152, 167-69 (1982);
Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice
test may be excused if a petitioner "presents an extraordinary case whereby a constitutional
violation resulted in the conviction of one who is actually innocent." Rust, 17 F.3d at 162; *see*
Murray v. Carrier, 477 U.S. 478, 496 (1986); Dretke v. Haley, 541 U.S. 386, 393 (2004).

For the doctrine of procedural default to apply, a firmly established state procedural rule

applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. Williams v. Coyle, 260 F.3d 684, 693 (6th Cir. 2001), *cert. denied*, 536 U.S. 947 (2002); *see also* Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. Coleman, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." Simpson, 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. Lee v. Kemna, 534 U.S. 362, 375 (2002).

If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. Rust, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The last state court to issue an opinion regarding these ineffective assistance of counsel claims, the Michigan Supreme Court, denied leave to appeal on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." Brinson, No. 127935. The Michigan Court of Appeals denied leave to appeal for the same reason. Brinson,

No. 256340.  Respondent argues that the Michigan appellate courts' reliance on M.C.R.

6.508(D) establishes procedural default.

M.C.R. 6.508(D) applies to motions for relief from judgment, and states, in relevant part:

(D) Entitlement to Relief.  The defendant has the burden of establishing entitlement to the relief requested.  The court may not grant relief to the defendant if the motion

(1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief . . .

M.C.R. 6.508(D).

"Although 6.508(D)(1), (2), and (3) list specific procedural grounds for denying a

defendant relief from judgment, these procedural grounds are not the exclusive grounds for

which a court may deny relief pursuant to M.C.R. 6.508(D)."  Abela v. Martin, 380 F.3d 915,

922 (6th Cir. 2004).  Thus, where the Michigan Supreme Court references only M.C.R. 6.508(D)

generally as a basis for denying leave to appeal, that reference, without more, is insufficient to

establish that the court denied leave to appeal based upon a procedural ground.  Id.  However,

where other "clarifying indicators" clearly demonstrate the state court's intention to invoke an

"independent and adequate state procedural rule" by its general reference to 6.508(D), a federal

court may determine that federal habeas review is barred.  Id. at 923-924.  Other "clarifying indicators" include where state courts below the supreme court specifically invoke a procedural bar.  Id.  In this case, the trial court denied Petitioner's specifically invoked Mich. Ct. R. 6.508(D)(3), in denying relief on these claims.  Mich. Ct. R. 6.508(D)(3) is a firmly established and regularly followed state ground precluding subsequent federal habeas review absent a showing of cause and prejudice.  Luberda v. Trippett, 211 F.3d 1004, 1007 (6th Cir. 2000), citing Rogers v. Howes, 144 F.3d 990 (6th Cir. 1998).  Thus, the Court finds that the Michigan Supreme Court's reliance on M.C.R. 6.508(D) is sufficient to establish procedural default with respect to these claims.

Petitioner's sixth claim alleging ineffective assistance of appellate counsel was asserted as cause to excuse Petitioner's procedural default.  Respondent also argues that this claim is procedurally barred.  Appellate counsel cannot be expected to assert his or her own ineffectiveness on appeal.  Therefore, the Sixth Circuit has held that an ineffective assistance of appellate counsel claim asserted at the first opportunity, on collateral review, is not defaulted. See Whiting v. Burt, 395 F.3d 602, 610 n.6 (6th Cir. 2005).  However, in this case, Petitioner raised his ineffective assistance of appellate counsel claim for the first time in his motion for reconsideration of the trial court's order denying his motion for relief from judgment.  The trial court denied the claim because a new claim may not be presented in a motion for reconsideration.  People v. Brinson, No. 00-171477, slip op. at 2 (Oakland County Circuit Court June 2, 2004).  Where a state denies an ineffective assistance of counsel claim for failure to raise it in accordance with state rules, the claim is procedurally defaulted.  Hicks v. Collins, 384 F.3d 204, 212 (6th Cir. 2004).  Therefore, Petitioner's ineffective assistance of appellate counsel claim is itself procedurally defaulted and cannot serve as cause to excuse the defaulted

ineffective assistance of trial counsel claims.

Petitioner fails to allege cause to excuse the procedural default of his ineffective assistance of appellate counsel claim. Thus, this claim is procedurally defaulted unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. Id. at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Id.

Petitioner has not supported his allegation of constitutional error with new reliable evidence of actual innocence that was not presented to the trial court. Accordingly, Petitioner's claim that his constitutional rights were violated by the ineffective assistance of appellate counsel is procedurally barred.

Because Petitioner's ineffective assistance of appellate counsel claim is procedurally defaulted, it cannot serve as cause to excuse Petitioner's procedural default. Accordingly, these ineffective assistance of trial claims are also procedurally defaulted because Petitioner has failed to establish cause to excuse the default and also has failed to satisfy the manifest injustice exception to procedural default.

## IV.     Conclusion

Petitioner has not established that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.


s/John Corbett O'Meara
United States District Judge


Date:  October 15, 2007




I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, October 15, 2007, by electronic and/or ordinary mail.


s/William Barkholz
Case Manager